FRANCISCO SANCHEZ MARCHANTE,   )
                               )   Civil Action
            Plaintiff     )   No. 12-cv-00691
                               )
       vs.               )
                               )
AUTO ZONE, INC.,           )
                               )
            Defendant    )

*   *   *

APPEARANCES:

       AGOSTINO CAMMISA, ESQUIRE
          On behalf of Plaintiff

       CHILTON G. GOEBEL, III, ESQUIRE
          On behalf of Defendant

*   *   *

O P I N I O N

JAMES KNOLL GARDNER
United States District Judge

     This matter is before the court on the Motion for
Summary Judgment of Defendant AutoZone Stores[,]Inc.[1], filed
September 20, 2012 together with the Memorandum of Law in Support
of the Motion for Summary Judgment of Defendant Autozone Stores,

---

[1]   Plaintiff sued defendant as "Auto Zone, Inc.".  In the body of its
motion for summary judgment, defendant indicates that its correct name is
"AutoZone Stores, Inc.".  However, defendant titled its motion: "Motion for
Summary Judgment of Defendant AutoZone Inc." (with no comma between "AutoZone"
and "Inc.").  On the other hand, defendant titled its brief: "Memorandum of
Law in Support of the Motion for Summary Judgment of Defendant AutoZone, Inc."
(with the comma inserted).  Neither party has formally amended the caption to
correct the error.

Inc.[2]  On October 2, 2012 Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment was filed together with Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment.

SUMMARY OF DECISION

For the following reasons, I grant the defendant's motion for summary judgment and dismiss plaintiff's Civil Action—Complaint.

Specifically, I conclude that defendant did not have actual notice of the oil spill on the sidewalk in front of the Auto Zone store upon which plaintiff allegedly slipped because there is no evidence in the record to support a finding that defendant either created it or had actual notice of it. Furthermore, I conclude, as a matter of law, that defendant did not have inferred notice of the oil spill because plaintiff has not established that the spill is the type of condition which defendant should have known had frequently recurred nor has plaintiff established that an inference of actual notice could be raised from the recurring nature of the dangerous condition.

Finally, I conclude that defendant did not have constructive notice of the spill because plaintiff has not

---

[2]     Together with its motion and memorandum of law, defendant also filed Defendant's Statement of Facts in accordance with my Rule 16 Status Conference Order dated May 2, 2012 and filed May 23, 2012 requiring a concise statement of facts, in numbered paragraphs, of the material facts which defendant contends there are no genuine issues of material fact, together with specific citations to the record.

established how long the oil was on the sidewalk, nor can that notice be inferred from the record facts.

Accordingly, because plaintiff cannot establish notice, defendant cannot be found liable for the sole claim of negligence contained in plaintiff's Civil Action—Complaint.

## JURISDICTION

This action is before the court on diversity jurisdiction. Plaintiff Francisco Sanchez Marchante is a citizen of the Commonwealth of Puerto Rico. Defendant Auto Zone Inc., is a Tennessee corporation with its principal place of business in Memphis, Tennessee. The amount in controversy is in excess of $75,000. See 28 U.S.C. § 1332.

## VENUE

Venue is proper in the United States District Court for the Eastern District of Pennsylvania because the events and omissions giving rise to plaintiffs' claims allegedly principally occurred in this district, namely, in Lehigh County, Pennsylvania. See 28 U.S.C. §§ 118, 1391(b).

## PLAINTIFF'S CLAIMS

On February 9, 2012 plaintiff Francisco Sanchez Marchante filed a Civil Action[ ]Complaint against defendant Auto Zone, Inc. The single, unnumbered claim alleges that defendant was negligent for failing to properly maintain and inspect its

property to keep it in a reasonable safe condition for customers to enter and exit.

Furthermore, plaintiff alleges that defendant was negligent in permitting, and encouraging, customers to perform work on their vehicles in the parking area adjacent to the business, with products purchased from defendant. Plaintiff avers that defendant failed to timely clean up or otherwise treat spilled oil or other fluids used in motor vehicles from the surface of the sidewalks and parking areas outside the business.

Finally, plaintiff alleges that defendant was negligent in not adequately warning patrons of the existence of the dangerous conditions existing at the time of his visit to defendant's business.

<u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure permits a party to seek summary judgment with respect to a claim of defense, or part of a claim of defense. Rule 56(a) provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); <u>National Association for the Advancement of Colored People "NAACP" v. North Hudson Regional Fire & Rescue</u>, 665 F.3d 464, 475 (3d Cir. 2012).

For a fact to be considered material, it "must have the potential to alter the outcome of the case." Id. (citing Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006)). Disputes concerning facts which are irrelevant or unnecessary do not preclude the district court from granting summary judgment. Id.

Where a party asserts that a particular fact is, or cannot be, genuinely disputed, the party must provide support for its assertion. Fed.R.Civ.P. 56(c)(1). Rule 56(c)(1) provides that party may support its factual assertions by

> (A) citing particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

When considering a motion for summary judgment, the district court must view the facts and record evidence presented "in the light most favorable to the non[-]moving party." North Hudson, 665 F.3d at 475 (quoting Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)).

If the moving party shows that there is no genuine issue of fact for trial, "the non-moving party then bears the

-5-

burden of identifying evidence that creates a genuine dispute regarding material facts." Id. (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in his pleadings, but rather he must present competent evidence from which a jury could reasonably find in his favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995)(Reed, J.).

"Ultimately, [w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Id. (quoting Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)) (internal quotations omitted and alteration in original).

FACTS

Based upon the pleadings, record papers, depositions, responses to interrogatories, exhibits, and the uncontested facts submitted by defendants in their statement of undisputed facts, which I deem as admitted for the purposes of this Opinion,[3] the

---

[3]   In my Rule 16 Status Conference Order dated May 2, 2012 and filed May 23, 2012, I directed any party filing a motion for summary judgment to file a brief, together with "a separate short concise statement, in numbered paragraphs, of the material facts about which the moving party contends there

(Footnote 3 continued):

pertinent facts, taken in the light most favorable to plaintiff

as the non-moving party, are as follows.

On June 19, 2010, at approximately 3:00 o'clock p.m.,

plaintiff entered the Auto Zone store located at 1871 South Fifth

Street, Allentown, Lehigh County, Pennsylvania to make a purchase

---

(Continuation of footnote 3):

is no genuine dispute."  The concise statement of facts is required to be
supported by citations to the record and where practicable, relevant portions
of the record were to be attached.

In addition, my Order required any party opposing a motion for
summary judgment to file a brief in opposition to the motion and "a separate
short concise statement, responding in numbered paragraphs to the moving
party's statement of the material facts about which the opposing party
contends there is a genuine dispute, with specific citations to the record,
and, where practicable, attach copies of the relevant portions of the record."

Moreover, my Order provided that if the moving party failed to
provide a concise statement, the motion may be denied on that basis alone.
With regard to the opposing party, my Order provided: "All factual assertions
set forth in the moving party's statement shall be deemed admitted unless
specifically denied by the opposing party in the manner set forth [by the
court]."

Rule 56(e)(2) of the Federal Rules of Civil Procedure is
consistent with my practice because it requires a responding party to properly
support its own allegations of fact and to address the opposing party's
assertions of fact.  Failure to do so can result in disregarding unsupported
allegations of fact or considering facts undisputed for the purposes of the
summary judgment motion.

In this case, Defendant's Statement of Facts in support of its
motion was filed as Exhibit I to its motion for summary judgment.  However,
plaintiff did not file any separate concise statement in opposition to
Defendant's Statement of Facts in the manner set forth in my Rule 16 Status
Conference Order.  Rather, plaintiff simply included a "Factual Summary"
section in its memorandum of law.  (See Plaintiff's Memorandum of Law in
Opposition to Defendant's Motion for Summary Judgment, at pages 1-3).

However, while plaintiff filed 11 exhibits with his response to
defendant's summary judgment motion, he does not provide citation to those
exhibits, or any of defendant's nine exhibits, in his "Factual Summary".
Accordingly, because plaintiff did not respond to Defendant's Statement of
Facts, I consider those facts unopposed and undisputed for purposes of this
motion.  Moreover, because plaintiff did not support his own "Factual Summary"
with citations to the record, I disregard any such factual references not
specifically stated in this Opinion.

of merchandise offered by sale by defendant.[4]  Plaintiff was

driven to the Auto Zone store by his brother Angel Sanchez, who

remained in the car.[5]  Plaintiff did not look for, or notice, any

debris or foreign substances on the sidewalk when he entered the

store.[6]  Plaintiff did not notice any cars in the parking area

with the hood raised or anyone working on any vehicle when he

entered the store.[7]

Plaintiff was in the store for 15 to 25 minutes.[8]

While plaintiff was in the store, Mr. Sanchez saw "a lot of

people" go in and out of the front doors of the store.[9]  When

plaintiff exited the store, he pushed the door open, stepped

through the doorway and within a few steps slipped on a nearly,

but not perfectly round, patch of oil about 10 inches in

diameter.[10]  Plaintiff slipped in the oil patch with his right

foot, threw his left foot forward and stumbled forward where he

---

[4]    Defendant's Exhibit I, Defendant's Statement of Facts at ¶ 2.
Defendant's Exhibit B, Transcript of Oral Deposition of Francisco Sanchez
Marchante taken May 10, 2011 ("Marchante Deposition") at page 22;

[5]    Plaintiff's Exhibit C, Transcript of Oral Deposition of Angel
Sanchez taken May 10, 2012 ("Sanchez Deposition") at page 15; Marchante
Deposition at pages 24 and 25.

[6]    Marchante Deposition at pages 36 and 37.

[7]    Id. at page 38.

[8]    Id. at page 37; Sanchez Deposition at pages 13 and 15.

[9]    Sanchez Deposition at page 15.

[10]    Marchante Deposition at pages 41 and 44.

fell to one knee.[11]  Plaintiff injured his left foot after putting all of his weight on that foot in an effort to regain his balance and not fall.[12]

After standing for a minute to let the pain pass, plaintiff limped to his brother's car, got in and sat down.[13] Plaintiff did not report the incident to anyone at the store while at the store or after he returned to his mother's home where he was staying.[14]  This accident was not reported to defendant until six months after the accident and there are no other known witnesses to the accident.[15]

Both plaintiff and his brother indicated that the oil patch plaintiff slipped on looked "fresh", with no other tracks or footprints other than plaintiff's in the oil patch.[16] However, both plaintiff and his brother indicated that Mr. Sanchez never got out of the car.[17]  Neither plaintiff nor his brother know how the oil on the ground got there.[18]  Neither

---

[11]    Marchante Deposition at pages 50-51

[12]    Id. at page 41.

[13]    Id. at pages 52 and 55.

[14]    Id. at pages 55 and 56.

[15]    See Defendant's Exhibit E, Answers of Defendant to Plaintiff's First Set of Interrogatories at ¶ 14.

[16]    Marchante Deposition at page 45; Sanchez Deposition at page 22.

[17]    Marchante Deposition at pages 53-54; Sanchez Deposition at page 16.

[18]    Marchante Deposition at page 49; Sanchez Deposition at page 22.

plaintiff nor his brother knows how long the oil was present on the sidewalk.[19]

Defendant had procedures in place to maintain the premises, which included inspection of the property in the morning, throughout the day, and at closing time.[20] Shawn Confer was the store manager, and Diego Garcia was the assistant manager at the time of plaintiff's accident.[21]

It was the policy of Auto Zone that, before the store opens in the morning, a manager or assistant manager must walk the property both inside and outside.[22] In addition, Auto Zone employees act as a team to periodically check the premises throughout the day to look for spills, clean up garbage in the store or parking lot, and to make sure the aisles and store are clean and safe.[23]

At the time of plaintiff's accident, Auto Zone had a policy helping customers with certain car-maintenance activities, such as changing a headlight, battery, or wiper blades; or adding

---

[19]    Marchante Deposition at page 45; Sanchez Deposition at page 22.

[20]    See Defendant's Exhibit G; Defendant's Exhibit H, Transcript of Deposition of Shawn Confer taken June 25, 2012 ("Confer Deposition"); Defendant's Exhibit F, Transcript of Deposition of Diego Garcia taken May 3, 2012 ("Garcia Deposition").

[21]    Confer Deposition at page 8.

[22]    Garcia Deposition at pages 11-12.

[23]    Id.

fluids such as oil, transmission fluid or washer fluid.[24]
However, other activities were not permitted in the parking lot
area, such as pulling off a tire; changing brake pads or shocks;
or anything that put a customer at some risk.[25]

If someone were adding fluid to a vehicle, an Auto Zone
employee would either give the customer a funnel to minimize
spillage or assist the customer in putting the fluid in the
vehicle.[26]  The adding of fluids to a vehicle happened multiple
time a day.[27]

It was the practice of Auto Zone employees to
immediately clean up any spills when an employee saw it occur, or
observed it on a random sweep.  On average, employees at Auto
Zone used a substance called Oil-Dry to clean up fluid spills in
the parking area once or twice a week.  Once every couple of
weeks or more, employees would have to clean a fluid spill from
the sidewalk outside the store.[28]  Fluid spills usually occurred
in the parking lot as a result of oil or other substances leaking

---

[24]    Confer Deposition at page 17.

[25]    Id. at pages 16-17.

[26]    Id. at pages 18 and 19.

[27]    Id. at page 29.

[28]    Id. at page 32.

from a car which came into the parking lot or from a vehicle which was overheating there.[29]

## DISCUSSION

As a United States District Court exercising diversity jurisdiction, I am required to apply the substantive law of Pennsylvania.  See Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

Here, plaintiff asserts negligence claims based upon premises liability.  The basic elements of a cause of action for negligence are: (1) the existence of a duty or obligation to conform to a certain standard of conduct recognized by law; (2) a breach of the duty; (3) causal connection between the breach of duty and the resulting injury; and (4) actual loss or damage. Krentz v. Consolidated Rail Corporation, 589 Pa. 576, 588, 910 A.2d 20, 27 (Pa. 2006).  Thus, plaintiff must show that defendant breached a legal duty as a condition precedent to establishing a cause of action for negligence.  Shaw v. Kirschbaum, 439 Pa.Super. 24, 31, 653 A.2d 12, 15 (1994).

The nature of the duty owed turns upon the relationship between the parties at the time of plaintiff's injury. Pittsburgh National Bank v. Perr, 431 Pa.Super. 580, 584, 637 A.2d 334, 336 (1994).  In a premises-liability action, the duty of care a possessor of land owes to one who enters the land

---

[29]    Confer Deposition at page 22.

depends on whether that person is a trespasser, licensee or invitee. <u>Guttridge v. AP Green Services, Inc.</u>, 804 A.2d 643, 655 (Pa.Super. 2002) (citation omitted). The parties do not dispute that plaintiff was an invitee to defendant's store.

"It is well-settled that a business owner owes a duty to an invitee 'to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.'" <u>David v. Pueblo Supermarket of St. Thomas</u>, 740 F.2d 230, 236 (3d Cir. 2004) (quoting <u>Morris v. Gimbel Brothers, Inc.</u>, 394 F.2d 143, 145 (3d Cir. 1968)).

However, under Pennsylvania law, a possessor of land "is not the insurer of the safety of those on the premises, and the mere existence of a harmful condition or the mere happening of an accident is not evidence of a breach of duty of care to invitees." <u>Gales v. United States</u>, 617 F.2d 42, 43 (W.D.Pa. 1985) (citing <u>Moultrey v. The Great A & P Tea Company</u>, 281 Pa.Super. 525, 422 A.2d 593 (1980)).

A possessor of land owes the following duty to a business invitee:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
>> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

-13-

> (b) should expect that they will not discover
> or realize the danger, or will fail to
> protect themselves against it, and
>
> (c) fails to exercise reasonable care to
> protect them against the danger.

Carrender v. Fitterer, 503 Pa. 178, 185, 469 A.2d 120, 123

(1983) (adopting Restatement (Second) of Torts § 343 (1965)).

In Moultry v. The Great A & P Tea Company, the Superior

Court of Pennsylvania analyzed § 343 of the Restatement (Second)

of Torts as follows:

> In construing this portion of the Restatement,
> Pennsylvania courts have uniformly held that if
> the harmful transitory condition is traceable to
> the possessor or his agent's acts, (that is, a
> condition created by the possessor of those under
> his authority), then the plaintiff need not prove
> any notice in order to hold the possessor
> accountable for the resulting harm.  In a related
> context, where the condition is one which the
> owner knows has frequently recurred, the jury may
> properly find that the owner had actual notice of
> the condition, thereby obviating additional proof
> by the invitee that the owner had constructive
> notice of it.  Where however, the evidence
> indicates that the transitory condition is
> traceable to persons other than those for whom the
> owner is, strictly speaking, ordinarily
> accountable, the jury may not consider the owner's
> ultimate liability in the absence of other
> evidence which tends to prove that the owner had
> actual notice of the condition or that the
> condition existed for such length of time that in
> the exercise of reasonable care the owner should
> have known of it.

281 Pa.Super. at 530-531, 422 A.2d at 598 (citations omitted).

In the case before this court, there is nothing in the

record to support a finding of actual notice.  However, plaintiff

argues that the record evidence reveals that the condition, and the potential for creating the condition, were frequent occurrences here. Thus, plaintiff relies on that portion of Moultry which states "where the condition is one which the owner knows has frequently recurred, the jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it."[30] 281 Pa.Super. at 531, 422 A.2d at 598.

Plaintiff argues that defendant sells motor oil and other automotive fluids which defendant expects a customer to use on his own. Moreover, plaintiff contends that, at times, defendant acquiesces in, or through the offer of assistance, encourages its customers adding fluids such as motor oil to their vehicles while the vehicle is parked in front of defendant's store.

Plaintiff further contends that at any time of day one can see several customers' vehicles parked in front of defendant's store with their hoods up. Trash receptacles are located on the sidewalk outside the front doors of the store, some immediately next to the entrance. Oil containers, some not

---

[30]     Throughout this Opinion I will refer to this category described in Moultry as "inferred actual notice", as distinguished from "actual notice" and "constructive notice". In addition, Moultry clarifies that there are two types of "actual notice". First, where the owner of the property has actual notice of a defect on his property because he created the defect himself. Second, where someone other than the owner created the defect, but the owner is actually aware of it.

always completely empty, can be disposed of in these trash cans, raising the foreseeable situation where some oil is spilled as it reaches the trash can, or the container is not properly placed in the trash can and falls out onto the sidewalk, in the path of persons entering and exiting the store.

Plaintiff asserts that defendant is aware of spills of fluids and that such spills are regular and frequent enough that defendant keeps what it calls "Oil-Dry" at the front entrance. Finally, plaintiff argues that, considering the regularity of the occurrence of spillage and obvious danger such spills present, notice is not necessary under the second scenario outlined in Moultry, supra, (stating that a frequently recurring occurrence provides what I am calling "inferred actual notice". For the following reasons, I disagree with plaintiff and conclude that plaintiff is required to establish evidence of constructive notice.

In Moultry, plaintiff slipped on a cherry on the floor in the fruit and vegetable aisle at defendant's grocery store. The Superior Court of Pennsylvania concluded that the trial court's grant of compulsory non-suit was proper on the issue of a frequently recurring occurrence because plaintiff did not provide "any evidence from which the jury could infer that fruit on the floor was a recurring and uncorrected condition, arising from the shopper's mishandling the fruit and the store's inadequate

efforts to clean the floor." 281 Pa.Super. at 533, 422 A.2d at 597.

In addition, Ms. Moultry offered no evidence of how the cherries were packaged and displayed, whether the method of packaging and display had led to the fruit falling on the floor in the first place or in the past, or whether the store had adopted any measures to prevent accidents of this type. <u>Id</u>.

Finally, the Superior Court concluded that Ms. Moultry did not prove that defendant either had a hand in creating the dangerous condition or that defendant had actual or constructive notice of such condition. Thus, while <u>Moultry</u> does stand for the proposition that one way plaintiff can satisfy the elements of his claim is by establishing that where the condition is one which the owner knows has frequently recurred, inferred actual notice of the condition may be established, thereby obviating the need to prove constructive notice. However, in any other respect, <u>Moultry</u> is unhelpful to plaintiff's claim in this matter.

A seminal case for frequently-recurring-condition claims is the decision of the Supreme Court of Pennsylvania in <u>Markman v. Fred P. Bell Stores Co.</u>, 285 Pa. 378, 132 A. 178 (1926). In <u>Markman</u>, plaintiff slipped and fell at the entrance of defendant's store on vegetable refuse which had accumulated on the wet platform and step outside defendant's store. The

evidence presented at trial indicated that defendant had a practice of washing celery, lettuce and other plants in the street at the right of the door to the store, and that parts came loose and accumulated on the pavement and step, and that the condition existed at the time of the accident.

The Court recognized that the mere presence of such refuse does not in itself show negligence, for this condition may temporarily arise in any store of the character of defendant's store. If the defendant exercises due care to keep the passageways clean, it is not responsible for an accidental slip and fall. 285 Pa. at 382-383, 132 A. at 180.

The Supreme Court of Pennsylvania also stated:

> Where, however, it is disclosed, as here, that the dangerous condition, arising from the same cause, was not mere chance occurrence, but so often repeated as to call for frequent notices to the owner, and on one occasion to the police, the same situation was shown to have existed when the customer was hurt, we cannot say the jury was not justified in finding defendant failed in his legal duty. The owner was liable for negligence of the employees in not keeping the aisles and entrances reasonably clean and safe, though the dangerous condition existing was contrary to his orders or wishes.

285 Pa. at 383, 132 A. at 180.

Thus, it is clear where there are numerous, specific, notices to the owner of the premises of a dangerous condition created by the owner's employees, and where the occurrence creating the dangerous condition is one that frequently occurs,

-18-

the owner has inferred actual notice and is liable for a claim under § 343 of the <u>Restatement (Second) of Torts</u>.

The facts of this case are not similar to the facts of <u>Markman</u>. In this case, the evidence, taken in the light most favorable to plaintiff, reveals that defendant has fluid spills in the parking lot area once or twice a week which came primarily from vehicles entering the lot leaking fluid. Fluid spills occurred on the sidewalk outside the front doors once every couple of weeks.

Furthermore, defendant's customers added fluids to their vehicles, with or without the help of defendant's employees, multiple times a day. If an employee saw someone spill something, or spilled something while helping a customer, that spill was immediately cleaned up.

There is no evidence that defendant's employees create a dangerous condition by spilling something without immediately cleaning the spill up. There is also no evidence that the oil spill plaintiff slipped on was created by plaintiff's employees. There is no evidence of any prior spills created by either a customer or an employee that resulted in anyone slipping in either the parking area or on the sidewalk.

Thus, I conclude that the facts of the within matter are in stark contrast to those described in the <u>Markman</u> case and as such are not analogous in any helpful way to plaintiff's case.

-19-

In _Myers v. The Penn Traffic Company_,
414 Pa.Super. 181, 606 A.2d 926 (1992) the Superior Court of
Pennsylvania affirmed the grant of summary judgment against
plaintiff where plaintiff claimed that either a grape on the
floor or an accumulation of wax caused her to fall at defendant's
premises.  There, plaintiff argued that because the condition,
that is, produce on the floor, frequently recurred, defendant had
actual notice of the condition on the day of the accident.  414
Pa.Super. at 187, 606 A.2d at 929.

In _Myers_, the evidence revealed that produce on the
floor in that area of the supermarket was a constant, day-long
problem which required full-time attention.  More specifically,
one of defendant's employees testified that employees working in
the produce section had to clean the produce area the entire time
they were on duty because filling the produce made a mess.  _Id._

The Superior Court concluded that there was nothing in
the record to indicate that the produce cases had been filled
near the time that plaintiff fell.  Moreover, the fact that
putting produce in the cases created a mess was not relevant if
there were nothing to show that the produce cases were actually
filled prior to plaintiff's accident.  _Id._ at 187-188,
606 A.2d at 929.

In this case, I conclude that the frequency of spills
involving oil or other fluids (once or twice a week in the

parking lot or once every couple of weeks on the sidewalk) is much less than the frequency of spills in either the <u>Markman</u> or <u>Myers</u> cases. Moreover, I find this case to be more analogous to <u>Myers</u> because plaintiff is unable to attribute the spilled oil in this case to either a customer or employee. Moreover, there is no evidence that anyone was putting oil in their vehicle either just before plaintiff arrived at defendant's store or during the time plaintiff was inside the store.

Just as in <u>Myers</u>, if no one was putting oil in a vehicle just before plaintiff arrived or while he was in the store, it is irrelevant that oil and other fluids were permitted to be put in a customers' vehicle in the parking lot numerous times a day and may result in a spill.

Accordingly, based upon all of the foregoing, I conclude that plaintiff has not proffered sufficient evidence upon which a jury may properly find that the owner had actual notice of the condition, thereby obviating additional proof by the invitee that the owner had constructive notice of it. <u>Moultry</u> <u>supra</u>. Thus, plaintiff needs to establish facts which can support a finding of constructive notice.

Constructive notice requires proof that the condition was present long enough that, in the exercise of reasonable care, defendant should have known of its presence. <u>Hower v. Wal-Mart</u>

<u>Stores, Inc.</u>, 2009 U.S.Dist. LEXIS 51557 at *10 (E.D.Pa. June 16, 2009)(Surrick, J.).

"State and federal courts applying Pennsylvania law in this area have consistently required a plaintiff to provide some proof as to the length of time a spill existed on the floor to establish constructive notice." <u>Kujawski v. Wal-Mart Stores, Inc.</u>, 2007 U.S.Dist. LEXIS 71261 (E.D.Pa. Sept. 26, 2007)(Giles, J.). One of the most important factors to be taken into consideration is the time elapsing between the origin or the dangerous condition and the accident. <u>Hower</u>, 2009 U.S.Dist. LEXIS 51557 at *11.

Footprints or tracking in a spilled substance is evidence or temporal duration and can support a finding of constructive notice. <u>Id.</u> However, the absence of tracking or footprints in and from the area of the spill is evidence that the spill is of recent origin. <u>Lanni v. Pennsylvania Railroad Company</u>, 371 Pa. 106, 88 A.2d 887 (1952).

Absent evidence of the length of time a spill remained on the ground prior to an accident, courts interpreting Pennsylvania law have granted summary judgment to defendants and made clear that constructive notice cannot be inferred. <u>Hower</u>, <u>supra</u>; <u>Henderson v. J.C. Penney Corp. Inc.</u>, 2009 U.S. Dist LEXIS 13854 (E.D.Pa. Feb. 20, 2009)(Jones, II, J.); <u>Cox v. Wal-Mart</u>

Stores East, L.P., 2008 U.S.Dst. LEXIS 66035 (E.D.Pa. Aug. 28, 2008)(Pratter, J.).

Here, plaintiff contends that because he was in the store for 15 to 25 minutes, he has satisfied the requirement to provide evidence concerning the length of time the spill was in front of the store.  I disagree.

Plaintiff's testimony was that he did not notice any spill on the sidewalk when he entered the store.  Furthermore, he argues in his brief that because no one was seen with the hood up on their vehicle when he arrived, that the spill must have been there before he arrived, notwithstanding the fact that he did not notice it on the way into the store.  However, both plaintiff and his brother testified at his respective deposition that the oil he slipped on appeared to be fresh and that there were no other footprints or other marks in the oil spill.[31]  As noted above, the absence of tracking or footprints is evidence that the spill is of *recent* origin.  Lanni, supra.

Moreover, plaintiff has no idea how the oil was spilled on the sidewalk, or who spilled it (be it a customer or an employee).  In addition, plaintiff had no idea how long the spill was there (be it one second, one minute, 10, 20, 30 or more minutes) before he slipped and fell.  See e.g. Hess v. Sun Ray Drug Co., 387 Pa. 199, 202, 127 A.2d 699, 701 (1956).

---

[31]    Marchante Deposition at page 45; Sanchez Deposition at page 22.

The lack of oily shoe or boot tracks, together with the fact that plaintiff did not observe an oil patch when he walked in, suggests that the oil spill occurred sometime between the time plaintiff entered and exited the store. This inference is supported by the testimony of Mr. Sanchez that "a lot" of people entered and exited the store between the time plaintiff entered and exited.[32]

The evidence does not support the conclusion that the oil spill existed for any length of time, other than for a short time before plaintiff fell. None of the evidence suggests that the spill existed for enough time that defendant, in the exercise of ordinary care, should have been aware of it. "Defendant cannot be liable for negligence by failing to clean up a spill only a short time after its occurrence." <u>Hower</u>, 2009 U.S.Dist LEXIS at *20.

Accordingly, because plaintiff cannot establish when the spill occurred and there is no evidence that the spill was anything but fresh, a reasonable jury could not conclude that defendant had constructive notice of the spill.

<u>CONCLUSION</u>

For the foregoing reasons, I grant defendant's motion for summary judgment and dismiss plaintiff's Civil Action—Complaint.

---

[32]    Sanchez Deposition at page 15.